IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORSHAM BLAIR MILL ARCT, LLC | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-2745 |
| TFV INVESTORS ASSOCIATES, LP, | : | |
| HORSHAM 1130 GP LLC and | : | |
| THOMAS F. VERRICHIA | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**　　　　　　　　　　　　　　　　　　　　**February 28, 2024**

SB PB Victory, LP ("Victory") moves to re-open this case and intervene as a plaintiff in this action, asserting its interest in enforcing its contract with Defendant Thomas F. Verrichia will be jeopardized if it cannot participate in these proceedings.  Because Victory's motion is untimely and its interests in this matter can be adequately represented by the existing parties, the motion shall be denied.

**BACKGROUND**

On July 18, 2023, Plaintiff Horsham Blair Mill ARCT, LLC ("ARCT Partner") filed a complaint against Defendants TFV Investors Associates, LP ("TFV"), Horsham 1130 GP LLC ("Horsham GP"), and Thomas F. Verrichia ("Verrichia"), alleging breach of contract and seeking a declaratory judgment. Compl. ¶¶ 81, 93, 98, ECF No. 1. On September 8, 2017, ARCT Partner and the Defendants entered into a Partnership Agreement and thereby created Horsham – Blair LP.[1] The Agreement established Horsham GP as the General Partner of Horsham – Blair LP with

---

[1] Plaintiff Horsham Blair Mill ARCT, LLC refers to itself as ARCT Partner in the Complaint and the Court adopts this terminology. ARCT Partner is a Delaware limited liability company whose sole member is a limited partnership. *See* Compl. ¶1, Ex. 1. Thomas Verrichia has ownership

a 0.5% ownership interest, and granted Horsham GP powers to manage the Partnership and serve as its agent for purposes of its business. Compl. Ex. 1. TFV and ARCT Partner were established as the limited partners of Horsham – Blair LP, with respective ownership interests of 49.5% and 50% of the partnership. *Id.* The Agreement also outlines the terms and purpose of the partnership: to acquire, develop, and own a shopping center in Horsham, Montgomery County, Pennsylvania, commonly known as Horsham Commons (the "Horsham Project").  Compl. ¶¶4-5; Ex. 1.

The Partnership Agreement also binds the partners to perform duties in good faith and in the best interests of the partnership, but protects them from liability for any loss or damage to the partnership unless it resulted from fraud, deceit, gross negligence, willful misconduct or wrongful taking.  Compl. Ex.1, §6.1.  Recognizing that irreparable harm would result if any of the provisions were not performed in accordance with the specific terms, and money damages would not adequately compensate for such harm, the Agreement also provides the partners with the remedies of specific performance and injunctive relief. *Id.* Article XII of the Agreement also outlines the partners' rights to initiate a Buy-Sell procedure if a dispute arises:

> In the event of Deadlock between the Partners and the failure of the Partners to resolve the Deadlock in accordance with the provisions of Section 11.7, any Partner may initiate a Buy-Sell procedure (hereinafter a "Buy/Sell"). The Partner who initiates the Buy/Sell is referred to as the "Proposing Partner". The remaining Partner shall be referred to as the "Other Partner" . . .  Notwithstanding anything contained in this Agreement, no Partner may institute a Buy/Sell under this Agreement until the earlier of (a) thirty-six (36) months after the date of this Agreement or (b) commencement of the term of the Lease with the Tenant.

---

interests in TFV and Horsham GP. *Id.*, Ex. 1; Mot. to Intervene ¶ 18, Ex. 8, ECF No. 21. Specifically, Verrichia is the sole member of Horsham GP, and the sole member of TFV Investors Associates GP LLC, the general partner of TFV. Compl., Ex 1. In the Partnership Agreement for Horsham – Blair LP, Verrichia is also named as the authorized representative of TFV and Horsham GP, and is listed as the registered agent of Horsham – Blair LP. *Id.*

2

Compl. Ex. 1, §12.1.  The Buy-Sell procedure gave the Other Partner the option to either sell its ownership interest in the partnership to the Proposing Partner or buy the Proposing Partner's Ownership Interest.  Compl. Ex.1, § 12.4. Failure by the Other Partner to make an election within forty-five days resulted in a default election to sell its interest to the Proposing Partner. *Id*.

Believing Defendants had mismanaged the Horsham Project and engaged in other improper and self-dealing actions beginning in December 2021, ARCT Partner sought to invoke the Buy-Sell remedy provided in the Agreement. Compl., ¶ 21. Defendants, however, refused to effect the sale of the property. *Id.* ¶ 22. On March 21, 2022, ARCT Partner filed suit against Defendants to compel the Horsham Property's sale. *Id*. at ¶ 23. Shortly thereafter, the parties negotiated a settlement under which Defendants agreed to purchase ARCT Partner's interest for $13.1 million, and ARCT Partner voluntarily withdrew its action without prejudice.  *Id*. at ¶¶ 24-27. Closing on the property was to occur by April 19, 2023. *Id*. at ¶ 31. It did not, and on June 29, 2023, ARCT Partner notified Defendants it intended to market and sell the Horsham Project. *Id*. at ¶ 38. Defendants never responded or acknowledged the letter. *Id*. ARCT Partner therefore brought this suit on July 18, 2023, seeking declaratory judgment and damages for breach of contract. *Id.* at ¶¶ 81, 93, 98.

Defendants failed to respond to the Complaint, and, on November 28, 2023, the Court entered default judgment in Plaintiff's favor.  The Default Judgment gave ARCT Partner "the right to market and sell the Horsham Project consistent with the parties' agreements." Order, Nov. 28, 2023, ECF No. 18*.* The Default Judgment also directed Defendants to "comply with reasonable closing obligations and efforts on any compliant third-party sale," and set forth the complete purchase price for the sale of the Horsham Project. *Id*. The Court further ordered the Clerk of Court to close the case.  Order, Nov. 29, 2023, ECF No. 19.

On December 7, 2023, SB PB Victory, LP ("Victory") filed the instant Motion to Reopen Case and Intervene as a plaintiff. Mot. Intervene 1, ECF No. 21. Victory is a creditor of Verrichia by way of a loan it made to Tonnelle North Bergen, LLC ("Tonnelle"), which Verrichia personally guaranteed. *Id*. Both Tonnelle and Verrichia defaulted on Victory's loan in 2019. *Id*. The parties then entered into binding arbitration proceedings in Colorado, which culminated in a two-phase award in Victory's favor. *Id.* at 1-2. Victory petitioned to confirm the award in this Court, and following litigation, this Court confirmed the Phase I award and entered judgment for $16,573.835.18 in principal, $2,762,141.11 in pre-judgment interest, and post-judgment interest at the rate of 15% from January 6, 2022, until payment. Ex. D, ECF No. 21-4. The Phase II Award in the amount of $5,127,443.48 plus interest, which continues to accrue at various rates has also been confirmed, and judgment has been entered.[2] Ex. F, ECF No. 21-6. On July 17, 2023, Victory transferred the Phase I Judgment to the Court of Common Pleas of Montgomery County, Pennsylvania. *Id.* at 2.

Victory also sought multiple charging orders.[3] *Id*. at 3. Relevant to this case, the Montgomery County Court of Common Pleas entered a charging order on October 17, 2023. Ex. 8, ECF No. 21-8. The Montgomery County Order provides:

> "any and all distributions, contributions, disbursements, transfers, monies, funds and payments then due and owing or thereafter due and owing to Verrichia, including (...) distributions made from proceeds of the sale of any assets" of TFV

---

[2] In addition to the Phase II confirmation petition, which was filed and approved in this Court, a second petition was filed in the Law Division of the Superior Court of New Jersey for Hudson County, which remains pending. Mot. Intervene, ¶10.

[3] On application by a judgment creditor of a partner or transferee, a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited partnership to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor. 15 Pa. C. S. § 8673(a).

and Horsham GP, among other listed entities, shall be delivered to Victory until Victory's Judgment is paid in full.

**DISCUSSION**

Victory now moves to intervene as of right in this case pursuant to Federal Rule of Civil Procedure 24(a), claiming it has an interest in any proceeds due and owing to Defendants TFV, Horsham GP, and Verrichia pursuant to the Montgomery County Orders. In support of its motion, Victory asserts it has had difficulty enforcing prior court orders regarding the debts owed to it by the Defendants, who have been uncooperative. Br. Support Mot. Intervene at 10, ECF No. 21. ARCT Partner opposes Victory's intervention motion because the motion is untimely, reopening the judgment and permitting intervention would unduly delay its right to sell the property, and Victory has no injury in fact or interest in the outcome of this litigation. Because the instant motion is untimely and the existing parties in this matter can adequately represent Victory's interests, the motion will be denied.

Under Federal Rule of Civil Procedure 24(a), "the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action[.]" A litigant is entitled to intervene as a matter of right if it can show: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that its interests will be impaired or affected, as a practical matter, by the disposition of the action; and (4) that its interests are not adequately represented by existing parties to the litigation. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

Turning to the first element, an application to intervene must be timely. *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Timeliness is determined by the court

based upon the totality of the circumstances. *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365–66 (1973); *see also United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994). In evaluating timeliness, the court considers three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The "stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved;" therefore, the analysis for the three timeliness factors overlap. *Id*. at 370. Generally, the court maintains a "reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371–72 (3d Cir. 2016). However, a "motion to intervene after entry of a decree should be denied except in extraordinary circumstances." *Fine Paper.*, 695 F.2d at 500 (citation omitted). When a motion to intervene is filed in the late stages of a proceeding, the first factor weighs heavily. *Id*. (citation omitted).

Second, the intervenor must demonstrate a sufficient interest "relating to the property or transaction which is the subject of the action that is significantly protectable." *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). In other words, there must be a "tangible threat to a legally cognizable interest to have the right to intervene." *Mountain Top*, 72 F.3d at 366 (citations omitted). The interest must be specific to the intervenor and directly affect the intervenor in a "substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972.

Third, the intervenor must show their interest may be affected or impaired. This Circuit narrowly defines "legal interests" for purposes of Rule 24(a)(2). *Atain Ins. Co. v. Lesser*, Civ. No. 19-05346, 2020 WL 919698, at *1 (E.D. Pa. Feb. 25, 2020). "In general, a mere economic interest

6

in the outcome of the litigation is insufficient to support a motion to intervene." *State Farm Mut. Auto. Ins. Co. v. Dabbene*, 511 F. Supp. 3d 600, 611 (E.D. Pa. Jan. 5, 2021). "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.*

Finally, an intervenor must show their interests are not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). Representation is considered adequate unless: (1) the interests of the parties diverge sufficiently and the existing party cannot devote proper attention to the intervener's interests, even if the intervener's interests are similar to those of a party; (2) there is collusion between the representative party and the opposing party; or (3) the representative party is not diligently prosecuting the suit. *In re WELLBUTRIN XL*, 268 F.R.D. 539, 547 (E.D. Pa. July 21, 2010) (citation omitted).

Turning first to the issue of timeliness, Victory asserts its motion to intervene is timely because it filed its motion a week after learning about the instant case. Mot. Intervene 10. The Court disagrees; the totality of the circumstances militate against finding the motion was timely. As noted by ARCT Partner, this motion was filed after final judgment was entered, and this case was readily discoverable through a simple internet or docket search for Verrichia's name.  Br. Opp'n. Mot. Intervene 5-6, ECF No. 23.  And re-opening this matter could well delay ARCT Partner's efforts to market and sell the Horsham Project property. Indeed, Victory has not provided an account of what efforts it made to discover this matter or explained why it only discovered this matter through an investigation conducted in the "past several days" before it filed this motion. Mot. Intervene ¶ 21. In the absence of any explanation, the Court finds Victory's intervention request to be untimely.

7

Victory also fails to make the showing necessary to satisfy the remaining *Kleissler* factors. Specifically, Victory has not shown its interests are not affected in a "substantially concrete fashion" by ARCT Partner's relief. *Kleissler*, 157 F.3d at 972. Victory is a judgment creditor of Verrichia and his assets, which include TFV and Horsham GP. But Victory's rights as a judgment creditor are not affected in a substantial or concrete way by the prior judgment. Though ARCT Partner has the right to sell the Horsham property and the proceeds are to be distributed pursuant to the parties' agreements, Victory's right to share in the proceeds paid to Verrichia following the Horsham sale is undisturbed by this judgment. And the Montgomery County Order already protects Victory's interest in those distributions. Mot. Intervene, Ex. D. There is thus no tangible threat to Victory's interests nor does it have an impaired legal interest beyond an economic one, such as would warrant its intervention. *See State Farm Mut. Auto. Ins. Co.*, 511 F. Supp. 3d. at 611 ("a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene."

Finally, Victory also fails to show its interests will be inadequately represented if it is not permitted to appear in this case. Victory has not articulated how or whether its interests diverge from ARCT Partner's; shown that ARCT Partner cannot devote the attention needed to protect Victory's interests, or has failed to diligently prosecute the case; or that there was collusion between ARCT Partner and the Defendants. *See In re Wellburtin XL*, 368 F.R.D. at 547 (citation omitted). Accordingly, the Court concludes Victory is not entitled to intervene as of right in this matter.

In the alternative, Federal Rule of Civil Procedure 24(b) authorizes permissive intervention at the discretion of the court. Under this rule, "the court may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that

shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In deciding whether to grant permissive intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' right." Fed. R. Civ. P. 24(b)(3). Victory has not argued it has a conditional right to intervene conferred by federal statute and there is no evidence of a common question of law or fact shared with ARCT Partner or the Defendants. Therefore, there is no reason for the Court to exercise its discretion to allow Victory to permissively intervene and the motion will be denied.

    An appropriate Order follows.

BY THE COURT:

/s/  Juan R. Sánchez
_____
Juan R. Sánchez,      C.J.